IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**SOJITZ CORPORATION OF AMERICA**<br><br>**REQUEST FOR DISCOVERY**<br>**PURSUANT TO 28 U.S.C. § 1782** | §<br>§<br>§<br>§<br>§<br>§  C.A. NO.<br>§<br>§<br>§<br>§ |

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION**
<u>**FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**</u>

WATSON FARLEY AND WILLIAMS
Attorneys for Applicant
Sojitz Corporation of America
250 West 55th St.
New York, NY 10019
Tel: (212) 922-2200
Email: nquartaro@wfw.com
zfarley@wfw.com

80482592v3

## PRELIMINARY STATEMENT

Applicant Sojitz Corporation of America ("Applicant") respectfully submits this Memorandum and the accompanying Declaration of Neil A. Quartaro in Support of Application for Discovery Pursuant to 28 U.S.C. § 1782 (the "Quartaro Dec.") in support of its application for an order, pursuant to 28 U.S.C. § 1782, authorizing discovery in the form of production of relevant documents in the possession, custody and/or control of two entities present in this district, Willis Towers and Watson (formerly the Willis Group) (the "Willis Group") and the American International Group ("AIG"). These documents will be used in the aid of an ongoing foreign arbitration (the "Arbitration") between Applicant and Ashland, Inc. ("Ashland") under the auspices of the International Court of Arbitration of the International Chamber of Commerce (the "ICC"). The Arbitration involves a dispute regarding payment from the sale of butadiene whose post-delivery voyage was interrupted due to a general average event[1]. Specifically, the documents sought will be used to provide critical evidence as to whether or not Ashland was compensated by their insurer, AIG, under their policy covering losses resulting from the declaration of general average arising from a vessel explosion following the sale and delivery of butadiene by Applicant to Ashland under a duly executed sales contract. Both Applicant and Ashland have agreed to the Arbitration without reservation. Ashland's counsel has advised the ICC that it has no objections to the discovery sought herein. Quartaro Dec. ¶ 41, Exhibit 5.

---

[1] "General average is a venerable doctrine of maritime law that dates back 2,800 years. The doctrine provides that when a portion of ship or cargo is sacrificed to save the rest from a real and substantial peril, each owner of property saved contributes ratably to make up the loss of those whose property has been sacrificed. General average contribution exists independently of marine insurance and is owed even in the absence of cargo insurance. However, cargo owners typically insure themselves against possible obligation arising from a general average situation." *Shaver Transp. Co. v. Travelers Indem. Co.*, 481 F. Supp. 892, 897 (D. Or. 1979) (Internal citation omitted).

## FACTUAL BACKGROUND

The facts relevant to the instant application are set forth in more detail in the accompanying Application and the Quartaro Dec. and are briefly outlined below.

**Background of Dispute**

On May 20, 2016, Applicant requested arbitration of its dispute with Ashland concerning an outstanding balance for a butadiene shipment delivered pursuant to a "Purchase and Sale Agreement of Butadiene" agreement covering the period from July 1, 2012 through December 31, 2014 (the "SCA-Ashland Sale Contract"). Quartaro Dec. ¶ 18, Exhibit 1, Ex. A; Exhibit 1. The dispute giving rise to the Arbitration relates to the sale and delivery of a parcel of butadiene (the "Cargo") under INCOTERMS 2010 "CFR [destination]" shipping terms. Quartaro Dec. ¶ 13. According to INCOTERMS 2010 "CFR" Shipping Terms, the seller, in this case Applicant, delivers goods by placing them aboard the performing vessel. Quartaro Dec. ¶ 14.

Applicant purchased the Cargo from non-party Braskem S.A. ("Braskem") pursuant to a "Purchase and Sale Agreement of Butadiene" between Braskem as Seller and Applicant as Buyer and covering the period July 1, 2012 to December 31, 2014. Quartaro Dec. ¶ 15. Applicant on-sold the Cargo to Ashland pursuant to the SCA-Ashland Sale Contract. Quartaro Dec. ¶ 16. The SCA-Ashland Sale Contract required Applicant to deliver the Cargo to Ashland on "CFR Port Neches" terms. Quartaro Dec. ¶ 17, Exhibit 1, Ex. A ¶ 5. The SCA-Ashland Sale Contract further states "[t]itle and risk of loss of damage to the goods shall both pass from Seller to Buyer at the load port as material passes the ingoing flange of the vessel." Quartaro Dec. ¶ 18, Exhibit 1 ¶ 15.

The Cargo was delivered to Ashland upon being laden aboard the performing vessel, M/T GOLDEN MILLER (the "Vessel"). Quartaro Dec. ¶ 19. Unfortunately, there was a fire aboard

the Vessel while she lay at the loading port of Salvador, Brazil (the "Casualty"). Quartaro Dec. ¶ 20. The fire occurred in the compressor room on-board the Vessel after the Cargo was successfully loaded, but before the Vessel left the dock. Quartaro Dec. ¶ 21. The Cargo was undamaged by the fire. Applicant timely passed all information regarding the casualty to Ashland. Quartaro Dec. ¶ 22.

The Vessel owner apparently determined that, due to fire damage, the Vessel could not complete its intended journey to Port Neches, Texas, USA. Quartaro Dec. ¶ 23. On December 20, 2013, the Vessel owner declared general average and the Vessel was towed to Freeport, Bahamas, where the cargo was transshipped to Port Neches aboard a substitute vessel, M/V GASCHEM BALTIC. Quartaro Dec. ¶ 24.

The Vessel's declaration of general average required Ashland to pay $340,311.53 as its pro-rata contribution to the costs of saving the Vessel and Cargo and arranging the substitute vessel to deliver the Cargo to Ashland. Quartaro Dec. ¶ 25. On February 24, 2014, Ashland submitted a short payment to Applicant for the Cargo of $1,695,699.38 against Applicant's invoice of $2,036,010.91. Quartaro Dec. ¶ 26. The unpaid balance of $340,311.53 was unilaterally set-off by Ashland, forcing Applicant to initiate the Arbitration. Quartaro Dec. ¶ 27.

**Arbitral Proceeding and Need for Relief Under 28 U.S.C. § 1782**

Following Applicant's request for arbitration with the ICC, a panel of 3 arbitrators was appointed and the necessary procedural steps proscribed by the ICC were undertaken by both Applicant and Ashland to formally begin the Arbitration. Quartaro Dec. ¶ 28. Pursuant to the discovery procedure and schedule agreed upon in the Terms of Reference filed with the ICC on November 4, 2016 both Applicant and Ashland made an initial exchange of relevant documents. Quartaro Dec. ¶ 29. In its initial disclosure, Applicant produced over 700 (seven hundred) pages

of documents to Ashland. Quartaro Dec. ¶ 30. In its initial disclosure, Ashland produced only 33 (thirty-three) pages of documents, comprised mostly of the SCA-Ashland Purchase Agreement, a letter between Applicant's counsel and Ashland's counsel, invoices between the parties and a news story about the Casualty. Significantly, Ashland's initial production provided no new information surrounding the events leading to the Arbitration. Quartaro Dec. ¶ 31.

Throughout the Arbitration, Ashland has denied that general average was declared or that Ashland's insurer covered this risk. Quartaro Dec. ¶ 32. Among the documents produced by Applicant is a chain of correspondence between Ashland and the Willis Group, a general average adjustor known today as Willis Towers and Watson, discussing the fire aboard the Vessel (the "Insurance Discussion"). Quartaro Dec. ¶ 33, Exhibit 2. The Insurance Discussion shows that Ashland was aware of the declaration of general average following the Casualty and that Ashland asked to be put in direct contact with the average adjustor, the Willis Group, without having to include Applicant. Quartaro Dec. ¶ 34. The Insurance Discussion also shows that Ashland tendered the payment of a general average bond, and perhaps the handling of the entire general average incident, to its insurer AIG. Quartaro Dec. ¶ 35. Once Ashland was in direct contact with the Willis Group, Applicant was no longer included on any communications regarding the Casualty and has no information about the outcome of Ashland's insurance claim. Quartaro Dec. ¶ 36.

In response to Ashland's production, and as permitted by the ICC's scheduling order, Applicant wrote to Ashland's counsel seeking specific additional documents relating to the declaration of general average and the involvement of Ashland's insurance provider, AIG. Quartaro Dec. ¶ 37. Following Applicant's letter, Ashland made a second production of documents with 56 (fifty-six) pages of documents, including a copy of the insurance contract with

AIG. The AIG contract showed that Ashland carried general average insurance coverage when the Casualty occurred. Quartaro Dec. ¶ 38. Ashland's counsel has informed the Applicant that they were no longer in possession of any relevant documents because Ashland has destroyed emails and documents that might be responsive to Applicant's request. Quartaro Dec. ¶ 39. Because Ashland cannot produce any documents relevant to Applicant's request, Applicant must obtain these documents directly from AIG and the Willis Group, both of whom have offices in this district. Quartaro Dec. ¶ 40. This evidence is critical to Applicant's case because it will definitively establish the liability of Ashland by establishing that general average was declared (which Ashland denies) and that Ashland had insurance coverage for this risk as the owner of the Cargo.

Applicant, through its undersigned Counsel, has advised Ashland's counsel that Applicant intends to seek the third party discovery sought herein. Quartaro Dec. ¶ 41. Ashland's counsel has advised counsel and the arbitral tribunal (the "Tribunal") that Ashland does not object to this application. Quartaro Dec. ¶ 41, Exhibit 5.

## ARGUMENT

### 1. 28 U.S.C. § 1782 PROVIDES FOR DISCOVERY IN AID OF A PROCEEDING IN A FOREIGN TRIBUNAL

Title 28 U.S.C. § 1782 ("§ 1782") "is the product of congressional efforts, over the span of [over] 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004)). § 1782 provides that the:

> district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or

5

> international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

The Second Circuit has summarized the requirements for a § 1782 application as:

> [t]he statutory language is unambiguous in its requirements: (1) the person from whom discovery is sought must reside or be found in the district of the district court to which the application is made, (2) the discovery must be 'for use in a proceeding in a foreign or international tribunal,' and (3) the application must be made 'by a foreign or international tribunal' or by 'any interested person.'

*Application of Gianoli Aldunate*, 3 F.3d 54, 58 (2d Cir. 1993) (Internal citations omitted).

   a. *Discovery is sought from businesses present in this district*

The requirement of presence within the district is met as both AIG and the Willis Group maintain offices within this district. Quartaro Dec. ¶¶ 10-11. In fact, according to the Willis Group's internet directory of office locations, they maintain at least 3 such facilities within this district. Similarly, AIG maintains multiple offices throughout the jurisdiction of this Court.

   b. *The discovery requested will be used in an ongoing foreign arbitration*

The discovery sought by this §1782 application is for use in an ongoing foreign arbitration before the ICC in London. Quartaro Dec. ¶ 12, Exhibit 1. Prior to the U.S. Supreme Court decision in *Intel*, the Second Circuit had determined that private arbitrations did not qualify as foreign proceedings under § 1782. (*See Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 190 - 191 (2d Cir. 1999). However, the Supreme Court's holding in *Intel* has led many courts, including the Southern District of New York, to expand the applicability of § 1782 to private arbitrations, including those conducted by the ICC. *See In Re Ex Parte Application of Kleimar N.V.*, 2016 WL 6906712, at *3 (S.D.N.Y. 2016) ("The Court is persuaded by the reasoning of

courts that have concluded that the LMAA is a 'foreign tribunal' within the domain of Section 1782." § 1782 relief denied on other grounds)). (*Jiangsu Steamship Co. v. Success Superior Ltd.*, 2015 WL 3439220, at *6 (S.D.N.Y. 2015) ("[The Supreme Court in *Intel*] merely acknowledge[d] the reality that proceedings in tribunals other than law courts can be adjudicative in nature. Arbitrations, for example, are 'adjudicative' in nature . . ." but denying § 1782 relief on other grounds)); *See Also:* (*In re Owl Shipping, LLC*, No. CIV.A. 14-5655 AET, 2014 WL 5320192, at *2 (D.N.J. 2014) ("[T]he discovery sought is for use in a proceeding before the London Maritime Arbitrators Association, which constitutes a foreign tribunal under § 1782.")) (*In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 238 (D.Mass. 2008) "The Court in *Intel* did not directly address whether private arbitral bodies like the ICC qualify as 'tribunals' under § 1782(a). But the Court's reasoning and dicta strongly indicate that these types of adjudicative bodies also fall within the statute.")) (*In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 957 (D.Minn. 2007) ("[T]his Court concludes that the assistance permissible under Section 1782 may extend to private arbitration bodies such as that at issue here.")) (*In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1224 (N.D.Ga. 2006) ("Although the Supreme Court in Intel did not address the precise issue of whether private arbitral panels are 'tribunals' within the meaning of the statute, it provided sufficient guidance for this Court to determine that arbitral panels convened by the [International Arbitral Centre of the Austrian Federal Economic Chamber in Vienna] are 'tribunals' within the statute's scope.")). Given the weight of recent precedent within, and without, this district, the ongoing ICC arbitration for which this discovery is requested satisfies the foreign tribunal requirement of § 1782.

c. *Discovery is being requested by the initiator of the Arbitration*

The Southern District of New York, citing *Intel*, stated that interested persons "include anyone, such as litigants . . . , who has a reasonable interest in obtaining the information requested." *Jiangsu*, 2015 A.M.C. 884, at *3. In *Intel*, the Supreme Court determined that an interested person "[n]o doubt [includes] litigants . . . [who] may be the most common example of [] the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256. Further, the Court found that a "complainant who triggers a European Commission investigation has a significant role in the process" particularly when they have "the right to submit information for . . . consideration[] and may proceed to court" if their complaint is dismissed. *Id.* These "participation rights" qualified the applicant in *Intel* "as an 'interested person' within any fair construction of that term[,]" despite the fact that they were not "litigants" in a judicial dispute. *Id.*

In the present matter now before this Court, Applicant is the party that began the Arbitration. Quartaro Dec. 12, Exhibit 1. Applicant, through the Arbitration, is attempting to recover funds due it by Ashland's failure to pay. As such, Applicant is comparable to a "litigant" in a traditional court setting and certainly has a stronger interest in the discovery sought herein than a mere "interested person" as outlined in *Intel*. Thus, Applicant is clearly an "interested person" for purposes of § 1782.

## 2. THE § 1782 REQUEST SATISFIES THE DISCRETIONARY FACTORS OF *INTEL*

Applicant respectfully contends that the instant application satisfies the requirements of § 1782, but the decision to grant the requested relief is within the discretion of the Court. The four discretionary factors from *Intel* that the Court should consider in analyzing a § 1782 application have been summarized by the Southern District of New York as:

(1) Whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case 'the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad';
(2) 'the nature of the foreign tribunal, the character of proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance';
(3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States'; and
(4) whether the discovery requests are 'unduly intrusive or burdensome.'

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *4 (S.D.N.Y. 2006) (Hon. Barbara S. Jones) (citing *Intel* 542 U.S. at 264-65).

   a. *The parties from whom discovery is being sought are not participants in the Arbitration*

The Applicant seeks § 1782 assistance in obtaining limited discovery from two non-parties, AIG and the Willis Group, who possess documents that are necessary for Applicant's claim in the Arbitration. Neither party is involved in the Arbitration.

   b. *The discovery sought is of the same character as that which has already been disclosed as part of the Arbitration's discovery process*

The Tribunal currently can only analyze the question of whether or not Ashland recovered from its insurer, AIG, based on an incomplete record. Ashland has advised that it has destroyed most of the documents and communications it possessed related to the Casualty. As such, the Tribunal will benefit from the discovery requested herein because it will provide the documentation necessary to prove whether or not the Casualty was a general average event and whether Ashland recovered any funds based on its claim with AIG arising from the Casualty. As such, the Tribunal has a strong interest in receiving and considering the documents that will be provided should this Court provide § 1782 assistance to the Applicant.

   c. *The discovery request is not contested by Applicant's opponent or the Tribunal*

Ashland, through its counsel, has advised that it does not object to Applicant's § 1782 request. Quartaro Dec. ¶ 41, Exhibit 5. Furthermore, the Tribunal indicated that it has no

objections to Applicant's request. Exhibit 2. Therefore, the Applicant's request for § 1782 assistance does not run afoul of any procedural or discovery rules governing the Arbitration and the documents sought by Applicant would be otherwise appropriate for a discovery request under the Federal Rules of Civil Procedure.

d. *The discovery request is narrowly tailored and seeks documents from specific entities involved in the aftermath of the Casualty*

Applicant's discovery request is the product of Ashland's inability to provide a full record of its activity surrounding the Casualty. Furthermore, Applicant's request is informed by the record and is, accordingly, narrowly tailored to target two entities already shown to possess documents central to the dispute giving rise to the Arbitration. Furthermore, the documents requested are related to a specific, definable event – the Casualty – with specific date ranges. Applicant has shown that both AIG and the Willis Group were involved in Ashland's potential recovery of damages resulting from the Casualty. AIG and the Willis Group communicated with Ashland regarding such recovery. Applicant has produced Ashland's insurance policy containing coverage for a general average event precisely like the Casualty. Quartaro Dec. ¶ 38, Exhibit 3. Applicant's § 1782 request is in no way a "fishing expedition" and is intended to assist an ongoing foreign proceeding wherein there is no objection to the Application and no other means whereby the target documents can be produced.

## Conclusion

For the reasons set forth above, Applicant respectfully submits that it has met all of the criteria for the issuance of an order authorizing discovery pursuant to 28 U.S.C. § 1782 and that this Court should therefore exercise its discretion to execute the proposed order directing the production of documents in aid of the ongoing foreign arbitration proceedings engaged in between Applicant and Ashland.

Dated: New York, New York
       January 5, 2017

*[signature]*

Neil A. Quartaro
Zachary J. Farley
WATSON FARLEY AND WILLIAMS
250 West 55th St.
New York, NY 10019
Tel: (212) 922-2200
nquartaro@wfw.com

11